PEOPLE *v.* SCOTT

1. HOMICIDE—INVOLUNTARY MANSLAUGHTER—DEFINITION.

   Involuntary manslaughter is the killing of another without malice and unintentionally while doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.

2. HOMICIDE — INVOLUNTARY MANSLAUGHTER — AUTOMOBILES — ELEMENTS — GROSS NEGLIGENCE — PROXIMATE CAUSE — APPEAL AND ERROR.

   A conviction of involuntary manslaughter committed with an automobile may be sustained if the trier of fact is able to determine that the accused was guilty of gross and culpable negligence in the operation of his vehicle and that this negligence was the proximate cause of the victim's death.

3. CRIMINAL LAW—CRIMINAL GUILT.

   Criminal guilt is personal and individual.

4. HOMICIDE—PROXIMATE CAUSE—TORT CONCEPTS.

   Tort concepts of proximate cause are not applicable in criminal homicide prosecutions; a closer causal connection between

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 54, 70.
[2, 5, 6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 278–286.
[3] 21 Am Jur 2d, Criminal Law §§ 138, 531.
[4] 40 Am Jur 2d, Homicide §§ 138, 531.
[7] 40 Am Jur 2d, Homicide §§ 13–22.

the wrong and the death is required in criminal cases than in tort cases because of the extreme penalty in the criminal cases.

5. Homicide—Involuntary Manslaughter—Automobiles—Proxi- mate Cause—Instructions to Jury.

Instruction to the jury in an involuntary manslaughter-by-auto- mobile case that the defendant could be found guilty if it was determined that both the defendant and the victim, a police officer pursuing the defendant who was killed when his police car collided with a third party's car, had acted negligent- ly was erroneous because criminal guilt is personal and in- dividual.

6. Homicide — Involuntary Manslaughter — Automobiles — Elements — Proximate Cause.

A defendant in a prosecution for involuntary manslaughter by automobile must have committed a grossly negligent act and the homicide for which he is being tried must have been the natural or necessary result of that act (MCLA § 750.321).

7. Homicide—Proximate Cause—Requirement.

The act of a defendant sought to be held criminally liable for homicide must have been *the* proximate cause of the death, not *a* proximate cause of the death.

Appeal from Recorder's Court of Detroit, Traffic and Ordinance Division, Andrew C. Wood, J. Sub- mitted Division 1 October 12, 1970, at Detroit. (Docket No. 8209.) Decided January 20, 1971.

Louis Nelson Scott was convicted of involuntary manslaughter. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Irving Tukel,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and DANHOF and
MAHINSKE,* JJ.

J. H. GILLIS, P. J. Defendant appeals as of right
from a conviction by jury of involuntary manslaugh-
ter, MCLA § 750.321 (Stat Ann 1954 Rev § 28.553).

The defendant, after engaging in an exchange of
verbal hostilities with the occupants of a police
patrol car, attempted to force the vehicle off the
road. A chase ensued and a radio alert was relayed
to other cars in the vicinity. An unmarked patrol
car, in pursuit of defendant, collided at an inter-
section with a DSR bus, killing one of the officers
in the patrol car.

The single issue raised on appeal is whether the
trial court committed reversible error when it in-
structed the jury that to find the defendant guilty of
involuntary manslaughter it must be established
that the defendant's negligence was "a" proximate
cause of the police officer's death and whether the
court further erred in rejecting the defendant's con-
tention that his negligence must constitute "the"
proximate cause.

In *People* v. *Ryczek* (1923), 224 Mich 106, 110,
the Court defined "involuntary manslaughter" as
follows:

"Involuntary manslaughter is the killing of an-
other without malice and unintentionally, but in
doing some unlawful act not amounting to a felony
nor naturally tending to cause death or great bodily
harm, or in negligently doing some act lawful in
itself, or by the negligent omission to perform a
legal duty."[1]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The jury was properly charged as to the elements which must
be proved to establish a conviction for manslaughter, see *People* v.
*Orr* (1928), 243 Mich 300, and that there is no distinction between
acts *malum prohibitum* and *malum in se*, see *People* v. *Harris* (1921),
214 Mich 145; *People* v. *Pavlic* (1924), 227 Mich 562.

Michigan courts have traditionally held that a conviction for involuntary manslaughter, especially when committed with an automobile, may be sustained if the trier of fact is

"[able to] determine [that] the defendant was guilty of gross and culpable negligence in the operation of his motor vehicle and that said gross negligence in the operation of such motor vehicle was the proximate cause of the death of the deceased." *People* v. *Layman* (1941), 299 Mich 141, 145, 146.

See also: *People* v. *Carter* (1893), 96 Mich 583; *People* v. *Barnes* (1914), 182 Mich 179; *People* v. *Wardell* (1939), 291 Mich 276; *People* v. *Marshall* (1961), 362 Mich 170.

Defendant stipulates, on appeal, that the speed and manner in which he was operating his car was such as could be deemed wilful and wanton disregard for the safety of others. It is the contention of the people that because the defendant readily admits that his driving was grossly negligent, that that erratic driving then becomes the proximate cause of the death of the police officer. They contend that if the defendant's driving had not been in violation of state law, the police would never have given chase and the death would not have occurred. Further, it is their contention that even if there were another independent cause for the officer's death, the jury could still find the defendant guilty of the offense charged if they found that his gross negligence was "a proximate cause" of the death. We find this logic unacceptable.

The trial judge's charge to the jury defined "proximate cause" to be

" * * * a direct and producing cause of the damage or injury. It doesn't have to be 'the' direct. The reason I say 'a' direct is that there can be more

than one proximate cause of the damage or injury complained of. * * * As far as you [the jury] are concerned in this case, it is up to you to determine whether there was a causal connection between the driving of the defendant, if you find there was improper driving, and the end result. * * * There can be more than one proximate cause, as I told you."

Further, the defense in objecting to the court's instructions, stated:

"*Mr. Matish:* In essence, I think what your Honor was telling the jury was, first of all, that they both can be negligence [*sic*] and you can still find the defendant guilty.

"*The Court:* That's right.

"*Mr. Matish:* However, the only way you can find him not guilty is to find that only the officer was negligent. I think in essence that was the meaning.

"*The Court:* I understand what you are pointing out * * * . I think that the definition of proximate cause I gave them was all right."

The court, in its definition of "proximate cause", has adopted the civil law definition and applied it to a criminal prosecution.

The application of tort proximate cause principles to homicide prosecutions was first exhaustively discussed in *Commonwealth* v. *Redline* (1958), 391 Pa 486 (137 A2d 472), where the court reversed the murder conviction of a felon whose co-felon was killed by the police who thwarted an attempted robbery. The court held that the mere coincidence of homicide and a felony is not sufficient to satisfy the requirements of the felony-murder statute. To convict the felon, the homicide must be committed in furtherance of that felony. The Michigan Supreme Court distinguished their position taken in *People* v. *Podolski* (1952), 332 Mich 508, where the

death of one co-felon was imputed to the other, in *People* v. *Austin* (1963), 370 Mich 12, where the majority opinion adopted the rationale of *Redline*.

Similarly, the Pennsylvania courts recently reconsidered the application of tort proximate cause principles to a homicide which occurred during the commission of a nonfelony in *Commonwealth* v. *Root* (1961), 403 Pa 571 (170 A2d 310, 82 ALR2d 452). In that case the defendant was engaged in a drag race on a public highway with another person who, on his own, swerved to the left side of the road, crashed head-on into an oncoming truck, and was killed. The Pennsylvania supreme court, in reversing Root's conviction of involuntary manslaughter, held that the defendant's reckless conduct was not a sufficient direct cause of the competing driver's death to make him criminally liable for the death. Further, the court held that the

"Tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide and more direct causal connection is required for conviction." (*Root, supra,* p 580).[2]

Chief Justice Jones illuminated the majority holding when he said:

"While precedent is to be found for application of the tort law concept of 'proximate cause' in fixing responsibility for criminal homicide, the want of any rational basis for its use in determining criminal liability can no longer be properly disregarded. When proximate cause was first borrowed from the field of tort law and applied to homicide prosecutions in Pennsylvania, the concept connoted a much more direct causal relation in producing the alleged culpable result than it does today. Proximate cause,

---

[2] It should be noted that the Pennsylvania Supreme Court in their *Commonwealth* v. *Root* (1961), 403 Pa 571 (170 A2d 310, 82 ALR 2d 452) decision cited *Commonwealth* v. *Redline* (1958), 391 Pa 486, (137 A2d 472).

as an essential element of a tort founded in negligence, has undergone in recent times, and is still undergoing, a marked extension. More specifically, this area of civil law has been progressively liberalized in favor of claims for damages for personal injuries to which careless conduct of others can in some way be associated. To persist in applying the tort liability concept of proximate cause to prosecutions for criminal homicide after the marked expansion of *civil* liability of defendants in tort actions for negligence would be to extend possible *criminal* liability to persons chargeable with unlawful or reckless conduct in circumstances not generally considered to present the likelihood of a resultant death." *Root, supra,* p 574.

If the tort liability concept of proximate cause were applied in criminal homicide prosecutions, the conduct of the decedent would have to be considered. That conduct would be examined not to prove that it was merely an additional proximate cause, but rather to determine whether it amounted to a subsequent wrongful act and thus superseded the original conduct chargeable to defendant. The trial court properly instructed the jury that they could find defendant not guilty if they determined that deceased's conduct was the sole cause of the collision. However, the court did give the instruction that the defendant could be found guilty if it was determined that both defendant and deceased had acted negligently. Such a charge is in opposition to the fundamental principles of criminal responsibility. It is exiomatic that "criminal guilt under our law is personal fault." *People* v. *Sobczak* (1955), 344 Mich 465, 470. "It is the very essence of our deep-rooted notions of criminal liability that guilt be personal and individual."[3] Commentary on

---

[3] Sayre, "Criminal Responsibility for the Acts of Another," 43 Harvard Law Review 689, 716 (1930).

*Commonwealth* v. *Redline, supra,* reiterates why the tort standard of proximate cause is unacceptable in criminal prosecutions:

"A closer causal connection between the felony and the killing than the proximate-cause theory normally applicable to tort cases should be required because of the extreme penalty attaching to a conviction for felony murder and the difference between the underlying rationales of criminal and tort law. The former is intended to impose punishment in appropriate cases while the latter is primarily concerned with who shall bear the burden of a loss."[4]

Other states have agreed with the reasoning adopted by Pennsylvania and have compelled their triers of fact, when implementing "proximate causation" in criminal prosecutions, to find that the defendant's act be the proximate cause of the homicide charged. It has been said this way:

"Whether the misconduct proven constitutes gross negligence or ordinary negligence it must appear that it was *the proximate cause* of the death." *People* v. *Hoe* (1958), 164 Cal App 2d 502, 508 (330 P2d 907, 911). (Emphasis supplied.)

and

"To hold a person criminally responsible for a homicide, his act must have been *the approximate cause* of the death as distinguished from the cause of a condition affording an opportunity for the compassing of the death by some other unconnected agency. *Thacker* v. *State* (1961), 103 Ga App 36, 39 (117 SE2d 913, 915).[5] (Emphasis supplied.)

---

[4] Note, 71 Harvard Law Review 1565, 1566 (1958).

[5] Prior to *Commonwealth* v. *Root, supra,* several courts, when charging the jury in cases of involuntary manslaughter, have required the test for proximate causation to be "the proximate cause" and not "a proximate cause." *State* v. *Campbell* (1910), 82 Conn 671 (74 A

The people, here, as in *People* v. *Marshall* (1961), 362 Mich 170, 174, actually seek from us an "interpretation of the manslaughter statute which would impose open-ended criminal liability". This we cannot do. It is true as a general rule of law:

"That a person engaged in the commission of an unlawful act is legally responsible for all of the consequences which may naturally or necessarily flow or result from such unlawful act." *People* v. *Barnes, supra,* p 197.

But before this principle of law can have any application in this case before us, it must first appear that the defendant's act was grossly negligent and that the resulting homicide was *"the* natural or necessary result of *the' act* of the defendant". *Barnes, supra,* p 198. (Emphasis supplied.) See also: *People* v. *Layman, supra; People* v. *Townsend* (1921), 214 Mich 267; *People* v. *Maki* (1929), 245 Mich 455.

While there are no Michigan cases which are factually similar, there are many Michigan cases dealing with involuntary manslaughter,

"which make it clear that to sustain a conviction of manslaughter the conduct of the accused must have been the immediate and direct cause of death." *People* v. *Ogg* (1970), 26 Mich App 372, 400, dissent

---

927); *State* v. *Schaeffer* (1917), 96 Ohio St 215 (117 NE 220); *Mullins* v. *State* (1927), 156 Tenn 105 (299 SW 1052); *State* v. *Smith* (1953), 238 NC 82 (76 SE2d 363); *Mullennix* v. *State* (1960), 102 Ga App 391 (116 SE2d 518); *People* v. *Rodriguez* (1960), 186 Cal App 2d 433 (8 Cal Rptr 863).

"The proximate cause" standard in criminal prosecutions as stated in the *Root* decision, has been cited in: *Commonwealth* v. *Atencio* (1963), 345 Mass 627 (189 NE2d 223); *Varlaro* v. *Schultz* (1964), 82 NJ Super 142 (197 A2d 16); *Commonwealth* v. *Dellelo* (1965), 349 Mass 525 (209 NE2d 303); *State* v. *Rullestad* (1966), 259 Iowa 209 (143 NW2d 278); *Commonwealth* v. *Feinberg* (1969), 433 Pa 558 (253 A2d 636); *Commonwealth ex rel Smith* v. *Myers* (1970), 438 Pa 218 (261 A2d 550).

by Danhof, J. and cases cited. See also: *People* v. *Beardsley* (1907), 150 Mich 206.

Although neither party is able to cite authority which requires that the defendant's criminally negligent act be the only direct and proximate cause of the ensuing homicide, this Court feels that the reasoning proffered by the Pennsylvania court in *Commonwealth* v. *Root, supra,* constitutes the better standard. In criminal prosecutions there must be a more direct causal connection between the criminal conduct of the defendant and the homicide charged than is required by the tort liability concept of proximate cause.

Reversed and remanded for new trial not inconsistent herewith.

All concurred.