**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

**v.**

**Robert LOPEZ, Defendant–Appellant.**

**No. 02CA0443.**

Colorado Court of Appeals,
Div. III.

March 11, 2004.

As Modified on Denial of Rehearing
April 22, 2004.

Certiorari Denied Sept. 7, 2004.*

* Justice COATS does not participate.

Justice BENDER would grant as to the following issues.

Whether the trial court erred [in] instructing the jury, and in answering the jury's question, by stating [that] Mr. Lopez's actions did not have to be "the" cause of the accident or the "primary" cause of the accident, but simply "a" cause of the accident. Whether the court's instructions unconstitutionally lowered the prosecution's burden of proof.

Whether the trial court erred by not allowing evidence to be presented that the victim in the case was not wearing a seatbelt.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Robert Lopez, appeals the judgment of conviction entered on jury verdicts finding him guilty of reckless vehicular homicide, driving under the influence, and driving with excessive alcohol content. We affirm.

A car occupied by the victim and driven by the victim's daughter turned left in front of defendant's vehicle. Defendant's vehicle collided with the other car, and the victim, who was not using a seatbelt, was thrown from it. The victim died at the scene. Blood alcohol tests showed that defendant was under the influence of alcohol, and eyewitnesses testified that defendant was speeding. Defendant was convicted of the above charges, and this appeal followed.

## I.

Defendant first contends that he was deprived of a fair trial because the trial court denied his challenge of a prospective juror for cause based on her statement that she would have difficulty following the court's instructions concerning the proximate cause element of the vehicular homicide charge. We disagree.

Following a series of questions concerning wholly unrelated hypothetical situations, the prospective juror expressed doubts about following an instruction on proximate cause. Defense counsel challenged this prospective juror for cause, and the prosecutor objected, arguing that the prospective juror's answers were based on the hypothetical situations.

The trial court denied the challenge, stating, "I'm not certain that she was thinking anything about the case. And I think the responses were entirely based on the hypotheticals. And that's what she said. I don't think a challenge for cause is made out."

■ We review a trial court's ruling on a challenge for cause for abuse of discretion. We must consider the entire voir dire of the prospective juror. *Carrillo v. People,* 974 P.2d 478 (Colo.1999).

■ A trial court must sustain a challenge for cause if the prospective juror has a state of mind evincing animosity or bias toward the defendant or the prosecution, § 16–10–103(1)(j), C.R.S.2003, but the court is not required to dismiss a prospective juror simply because he or she has indicated a possible bias. If the court is satisfied that the prospective juror will base the decision on the evidence and will follow the court's instructions, the juror should not be disqualified. The trial court is accorded great deference in deciding a challenge for cause because such decisions turn on an assessment of the prospective juror's credibility, demeanor, and sincerity in explaining his or her state of mind. *People v. Strean,* 74 P.3d 387 (Colo.App.2002).

■ A prospective juror should be excused if it is doubtful that he or she will be governed by the instructions of the court on the law applicable to the case. *Morgan v. People,* 624 P.2d 1331 (Colo.1981). However, if the juror's answers are inconsistent or self-contradictory, only the trial court can assess the potential juror's state of mind by personal observation. *Carrillo v. People, supra.*

Here, in an earlier part of the voir dire examination, this prospective juror clearly indicated that she could be a fair and impartial juror, grant defendant the presumption of innocence, and hold the prosecution to its burden of proof. This was a clear statement of her ability to be a fair and impartial juror and of her willingness to follow the basic rules of law.

After considering the entire voir dire of this prospective juror, including the confusion caused by the unrelated hypothetical questions, and giving deference to the trial court's assessment of the prospective juror's credibility, demeanor, and sincerity, we perceive no abuse of discretion in the trial court's ruling.

II.

Defendant next contends that the trial court incorrectly instructed the jury on the definition of proximate cause in both the jury instruction and its response to a question from the jurors. We disagree.

On the charge of reckless vehicular homicide, the jury was instructed that one element of the crime was that defendant's conduct "was the proximate cause" of the victim's death. The jury instructions defined proximate cause as follows:

> The phrase 'proximate cause' used in these instructions means an act or failure to act which in natural and probable sequence produced the death of [the victim]. It is a cause without which the death of [the victim] would not have occurred.

> If more than one act or failure to act contributed to the death of [the victim], then each act or failure to act may have been a proximate cause of the death. A proximate cause does not have to be the only cause or the last or nearest cause. It is sufficient if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause the death of [the victim].

During deliberations, the jurors asked whether the difference between the phrase "*the* proximate cause" in the elemental instruction and the phrase "*a* proximate cause" in the instruction defining proximate cause was significant. The trial court answered that the proximate cause did not have to be the only or primary cause or the last or nearest cause.

Defendant argues that there can be only one proximate cause, and thus, the instruction and the answer constituted reversible error. We disagree.

■ "Proximate cause ... means a cause which in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have been sustained." *People v. Stewart*, 55 P.3d 107, 116 (Colo.2002)(quoting CJI–Crim. 9(3) (1983)). Thus, a defendant's conduct is the cause of the victim's death in a criminal homicide if "it began a chain of events the natural and probable consequence of which was the victim's death." *People v. Saavedra–Rodriguez*, 971 P.2d 223, 225 (Colo. 1998); *see Hamrick v. People*, 624 P.2d 1320 (Colo.1981).

> In the criminal law, the gist of the concept [of proximate cause] is the not-so-complex principle that persons normally should be deemed responsible for the natural and probable consequences of their acts. The principle serves an evidentiary function, requiring proof by the prosecution of the causal relationship between the defendant's conduct and the result.

*People v. Rostad*, 669 P.2d 126, 128 (Colo. 1983) (citation omitted).

The concept of proximate cause in the criminal law is similar to the concept as developed in civil tort law. *People v. Acosta*, 860 P.2d 1376 (Colo.App.1993). The definition of proximate cause in CJI–Crim. 9(3), relied on by the supreme court in *People v. Stewart, supra*, in turn cites the civil jury instructions as authority. The language of CJI–Crim. 9(3) is similar to the definition of "cause" in CJI–Civ. 4th 9:18 (2002) and the first paragraph in CJI–Civ. 4th 9:20 (2002). *See* CJI–Civ. 4th 9:18 special note (stating that the concept of proximate cause is included in the instructions).

■ The function of the concept of proximate cause, to establish a causal connection between conduct and injury, is the same in both civil law and criminal law. In civil tort law there can be more than one proximate cause. *Rodriguez v. Healthone*, 24 P.3d 9 (Colo.App.2000), *rev'd in part on other grounds*, 50 P.3d 879 (Colo.2002). We per-

ceive no reason to conclude that in criminal law there can be only one proximate cause. *See People v. Acosta, supra*, 860 P.2d at 1381 (finding no plain error where trial court adopted a civil jury instruction and instructed the jury that "the proximate cause" does not have to be the only cause or the last or nearest cause).

■ Therefore, we conclude there can be more than one proximate cause of the victim's death, and defendant's conduct does not have to be the only, nearest, or last cause of death, so long as it is a cause but for which the death would not have occurred. *See People v. Acosta, supra*.

However, we note that the trial court's instruction defining proximate cause included the phrase "failure to act." This was an erroneous statement of the definition because proximate cause refers to an affirmative act and excludes acts of omission. *People v. Stewart, supra*, 55 P.3d at 116; CJI–Crim. 9(3). Defendant did not raise this issue in the trial court or on appeal. In any event, we conclude that the error was harmless under the circumstances of this case. Defendant was charged with committing an affirmative act, and the prosecution did not base its case on a failure to act.

### III.

■ Defendant next contends that the court erred by disallowing evidence that the victim was not wearing a seatbelt because that evidence was relevant on the issue of the proximate cause of the victim's death. We disagree.

In the trial court, defendant specifically abandoned his argument that the victim's failure to use a seatbelt was an intervening cause of her death. His argument in the trial court, and the focus of his contention here, is that the seatbelt evidence was relevant as part of the "truth of the case" relating to whether defendant's conduct was the proximate cause of the victim's death.

The determination whether evidence is relevant is within the sound discretion of the trial court. *People v. Durre*, 713 P.2d 1344 (Colo.App.1985). Evidence is relevant if it tends to make the existence of a fact more or

less probable than it would be without such evidence. CRE 401.

In a prosecution for vehicular homicide in violation of § 18–3–106(1)(a), C.R.S.2003, the prosecution must prove that the defendant's reckless driving was a proximate cause of the death of another. Proximate cause is a cause that in natural and probable sequence produced the injury and without which the injury would not have occurred. *People v. Stewart, supra;* CJI–Crim. 9(3).

█ A defendant must take the victim as he finds him or her. *Hamrick v. People, supra.* A victim's contributory negligence is not a defense to a vehicular homicide charge unless the negligence was an intervening cause. *People v. Dunhill,* 40 Colo.App. 137, 570 P.2d 1097 (1977).

Here, the victim was not using a seatbelt when defendant engaged in his reckless driving. The failure to use a seatbelt was not a contributing factor in the collision of the two vehicles. Also, the victim's failure to use a seatbelt had nothing to do with defendant's driving conduct. Further, the victim's failure to use a seatbelt would not have caused her death in the absence of defendant's reckless driving. Therefore, we fail to see how the seatbelt evidence made it less probable that defendant's conduct, in natural and probable sequence, caused the death of the victim or more probable that the death would have occurred absent defendant's conduct. *See People v. Rostad, supra,* 669 P.2d at 128 (gist of proximate cause in the criminal law is "that persons normally should be deemed responsible for the natural and probable consequences of their acts").

Defendant relies on *People v. Moore,* 246 Mich.App. 172, 631 N.W.2d 779 (2001), as support for his argument that the victim's failure to use a seatbelt was relevant on the proximate cause issue. We do not find *Moore* persuasive.

Initially, we note that Michigan cases before and after *Moore* have held that evidence of the victim's failure to wear a seatbelt was properly excluded. *People v. Werner,* 254 Mich.App. 528, 659 N.W.2d 688 (2002); *People v. Richardson,* 170 Mich.App. 470, 428 N.W.2d 698 (1988). The facts of these other cases, which involved collisions between two vehicles, are much closer to the facts here. In *Moore,* the victim's car collided with the defendant's truck while it was stopped or nearly stopped, careened off the truck, and hit a third vehicle. The court in *People v. Werner, supra,* distinguished *Moore,* as do we, because in *Moore* the victim's death was remote from the defendant's conduct.

Moreover, the court in *Moore* distinguished the earlier Michigan cases in part because Michigan had subsequently made seatbelts mandatory by statute. We do not find Colorado's seatbelt statute, § 42–4–237, C.R.S.2003, a persuasive reason to follow *Moore.*

Section 42–4–237(2), C.R.S.2003, makes seatbelt usage mandatory for the driver and the front seat passenger. However, § 42–4–237(7), C.R.S.2003, limits the use of evidence of failure to comply with § 42–4–237(2) to mitigation of "awards for pain and suffering" and specifically provides that it shall not be used to limit "recovery of economic loss and medical payments." *See Anderson v. Watson,* 953 P.2d 1284 (Colo.1998).

This severe statutory limit on the use of seatbelt evidence in civil cases in Colorado makes it clear that such evidence cannot be used to avoid liability for negligent conduct. It would be anomalous to refuse to permit seatbelt evidence to be used to avoid liability in a civil case, but allow the same evidence to be used to avoid responsibility in a criminal case arising out of the same facts.

Accordingly, we perceive no abuse of discretion in the trial court's rejection of the seatbelt evidence.

We find support for this conclusion in cases from other jurisdictions holding that the victim's failure to wear a seatbelt was not relevant in vehicular homicide cases. *See, e.g., People v. Werner, supra; State v. Mitchell,* 67 Ohio App.3d 123, 586 N.E.2d 196 (1990); *People v. Richardson, supra.* We also note that other jurisdictions have held that failure of the victim to use a seatbelt is not an intervening cause in a vehicular homicide case. *See Panther v. State,* 780 P.2d 386 (Alaska Ct.App.1989); *Union v. State,* 642 So.2d 91 (Fla.Dist.Ct.App.1994); *State v.*

*Hubka,* 480 N.W.2d 867 (Iowa 1992); *State v. Nester,* 175 W.Va. 539, 336 S.E.2d 187 (1985).

### IV.

Defendant next contends the trial court erred by not instructing the jury that the left turn by the driver of the victim's vehicle was an independent intervening cause of the victim's death. We disagree.

Three elements must be satisfied to establish an independent intervening cause sufficient to relieve a defendant of responsibility for his or her conduct: (1) the defendant must not participate in the intervening cause; (2) the intervening cause is one but for which the death would not have occurred; and (3) the intervening cause must not have been reasonably foreseeable. An intervening cause is one that interrupts the natural and probable sequence of events following the defendant's acts and intervenes to cause the death. An intervening cause destroys the causal connection between the defendant's acts and the victim's injury, thereby becoming the cause of the injury. *People v. Saavedra–Rodriguez, supra; People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975).

Simple negligence that contributes to the death of a victim is foreseeable and, as a matter of law, cannot be an independent intervening cause. However, gross negligence is unforeseeable behavior, and it may serve as an intervening cause. *People v. Stewart, supra; People v. Gentry,* 738 P.2d 1188 (Colo.1987). Gross negligence is conduct beyond simple negligence showing an extreme departure from the ordinary standard of care. *Ajay Sports, Inc. v. Casazza,* 1 P.3d 267 (Colo.App.2000).

An intervening cause defense is treated like an affirmative defense for the purpose of determining the quantum of evidence necessary to submit the issue to the jury. Thus, there must be a scintilla of evidence to support the defense. The trial court must make the threshold determination whether there was sufficient evidence to support the defense. *People v. Saavedra–Rodriguez, supra.*

We agree with the court that the evidence of the other driver's conduct was insufficient to support a finding of gross negligence.

The evidence in the record reveals that the victim's daughter was driving at the speed limit and saw defendant's car and another car approaching. She determined that she could safely turn left in front of the approaching cars, and she started her left turn. Defendant was driving over the speed limit, and he passed the other approaching car. During the turn, the victim screamed, "No." The daughter saw defendant's car approaching, decided she still had time to clear the intersection, and she accelerated in an attempt to do so. Defendant's vehicle then collided with the rear portion of the daughter's vehicle.

The daughter's decisions to turn left and to accelerate after the victim's warning might support a finding of negligence. However, even if she made misjudgments, nothing in the record shows that her decisions to turn left and to accelerate in an attempt to avoid the collision constituted an extreme departure from the ordinary standard of care sufficient to support a finding of gross negligence. It may have been a driving error, but it was not abnormal behavior. *See People v. Calvaresi, supra,* 188 Colo. at 283, 534 P.2d at 319 ("gross negligence is abnormal human behavior"); *see also People v. Dunhill, supra* (victim's contributory negligence in walking near the roadway was not an independent intervening cause).

Accordingly, we conclude that the record supports the trial court's determination that the evidence did not show the other driver to be grossly negligent. Therefore the court did not err by refusing an intervening cause instruction.

The judgment is affirmed.

Judge TAUBMAN and Judge CARPARELLI concur.