24CA0646 Peo v Novak 04-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0646
La Plata County District Court No. 21CR354
Honorable Suzanne F. Carlson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

William Edward Novak,

Defendant-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Martinez*, and Ashby*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, William Edward Novak, appeals the district court's restitution order.  We affirm.

## I.     Background

¶ 2     Novak's arm was in a cast when, around midnight on August 25, 2021, he hit John Dunn in the head multiple times with that arm.  Dunn's injuries were catastrophic.  He suffered skull and facial fractures, plus traumatic brain injury including hemorrhages and "pulverized" brain tissue.  Dunn was continuously hospitalized for nearly two years as he was treated for these injuries while relearning, among other bodily functions, how to swallow, speak, move his hands and feet, and walk short distances without assistance.

¶ 3     Originally charged with first degree assault, Novak pled guilty to second degree assault and agreed to a sentence of up to eight years in prison.  He also agreed to pay restitution.

¶ 4     Before sentencing, the prosecution requested restitution in the following amounts: (1) $27,653.04 to Dunn's parents for their housing costs while tending to Dunn in the hospital; (2) $3,000 to reimburse the Victim's Compensation Program (VCA); and (3) $1,600,140.07 to reimburse Conduent, on behalf of Cigna, for

medical payments.  *See* § 18-1.3-602(4)(a)(III), C.R.S. 2025 (insurers may be "victims" for the purpose of restitution).  The prosecution attached invoices from Dunn's parents, an award letter from the VCA, and a fourteen-page document from Conduent listing medical claims and benefits paid for services provided between May 2022 and June 2023, "related to the date of loss on or around 08/25/21."  The Conduent document named Dunn as the patient, noted "Date Of Accident: 8/25/2021," and showed nearly 270 line items with claim numbers, "Misc" codes, provider names, dates of service, claim amounts, and benefit amounts.

¶ 5     At sentencing, Novak admitted that his actions caused the "damage and pain" that changed Dunn's life.  The court considered letters and statements in support of Novak, victim impact letters and statements describing Dunn's injuries and medical treatments, and four video clips (the contents of which are not part of the appellate record) before sentencing Novak to eight years in prison and ordering him to pay the full amount of restitution requested.  Novak objected only to the amount of restitution requested to reimburse Conduent.

¶ 6    The district court held an evidentiary hearing.  There, the prosecution largely relied on documents including, as relevant here, Dunn's patient intake form from Craig Hospital, which summarized his injuries and medical treatment through August 2, 2022; Dunn's sister's "consolidated report of medical care and issues," describing the medical procedures and complications Dunn endured "as a result of the injuries he sustained"; many victim impact statements from friends and family; and the Conduent document.  The prosecution also called Dunn's mother to testify about housing expenses and Dunn's movement between various hospitals during his twenty-three-month hospitalization.

¶ 7    Novak did not cross-examine Dunn's mother or present any evidence.  He simply argued that the Conduent document was not specific enough to show that each of the medical services charged were related to the injuries Novak caused.

¶ 8    The court found that (1) the Conduent document was corroborated by the date of Novak's offense plus numerous documents and statements including evidence presented at sentencing; (2) Novak had presented no evidence in rebuttal; and (3) the prosecution had established the amount requested by a

preponderance of the evidence. It once again ordered restitution in the full amounts requested by the prosecution.

## II.     Discussion

¶ 9     On appeal, Novak contends that the prosecution presented insufficient evidence "to establish that . . . Novak caused the amount of restitution awarded for medical expenses." In other words, he argues that neither the Conduent document nor any other evidence before the district court adequately connected the medical claims to the injuries he caused. We disagree.

### A.     Standard of Review and Applicable Law

¶ 10     The parties agree that the applicable standard of review is de novo — the standard that applies to a true sufficiency-of-the-evidence challenge. *See Martinez v. People*, 2024 CO 6M, ¶¶ 19-20. In reviewing the record de novo, we "draw every inference fairly deducible from the evidence in favor of the court's decision." *People v. Dyson*, 2021 COA 57, ¶ 15 (quoting *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). And we ask "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant

caused that amount of loss." *People v. Barbre*, 2018 COA 123, ¶ 25. Awardable losses include amounts paid for long-term and ongoing medical expenses. § 18-1.3-603(2)(b)(I), C.R.S. 2025.

¶ 11 Because convicted defendants should be obliged to "make full restitution to those harmed by their misconduct," § 18-1.3-601(1)(b), C.R.S. 2025, every judgment of conviction must include consideration of "any pecuniary loss suffered by a victim . . . [and] proximately caused by an offender's conduct." §§ 18-1.3-602(3)(a); 18-1.3-603(1). A defendant's actions proximately caused a loss if, in the natural and probable sequence of events, they produced the claimed injury. *Martinez*, ¶ 13. This causal connection may be broken by an independent intervening event that was not reasonably foreseeable. *See People v. Lopez*, 97 P.3d 277, 282 (Colo. App. 2004).

¶ 12 The prosecution bears the burden of proving, by a preponderance of the evidence, both the amount of restitution owed and that the victim's losses were proximately caused by the defendant. *People v. Perez*, 2017 COA 52M, ¶ 10. This burden is met when the prosecution demonstrates that the existence of a contested fact is more probable than its nonexistence. *Dyson*, ¶ 14.

5

## B. Application

¶ 13 The crux of Novak's argument, as we read it, is that the prosecution failed to prove that the injuries he inflicted caused each line item of medical treatment shown on the Conduent document. He does not dispute that he seriously injured Dunn, question whether Dunn was continuously hospitalized following the injuries he admittedly caused (during which time the medical expenses accrued), challenge any particular line item on the Conduent document, or assert that an intervening event caused any of Dunn's medical charges. We perceive ample evidence to support the restitution order.

¶ 14 First, we disagree that the prosecution must prove that each of hundreds of continuous medical claims was proximately caused by Novak. *See People in Interest of A.V.*, 2018 COA 138M, ¶ 24 ("[T]he prosecution is not required to prove restitution by the same quality of evidence required in a trial on the merits of the case."). We instead agree with a division of this court that, when an offender proximately causes a victim's injuries and presents no countervailing evidence as to the amount of the loss, as in this case, medical bills with the detail provided on the Conduent document,

6

plus a diagnosis description, are sufficient to prove by a preponderance of the evidence that the offender caused the amount of loss shown on the medical bills. *See People v. Babcock*, 2023 COA 49, ¶¶ 30-31 (where the bills showed "the date of service, medical provider, claim type, diagnosis code, diagnosis description, billed amount, and amount paid"), *aff'd*, 2025 CO 26. Although the prosecution did not provide a translation of the "Misc" codes here, as provided in *Babcock*, Novak concedes that these are medical codes.[1]

¶ 15    Second, the prosecution's evidence of medical costs did not wholly rely on the Conduent document, as Novak seems to suggest. Dunn's mother named the four institutions that received benefits in excess of $10,000 when she told the court where Dunn received

---

[1] Novak's opening brief specifically questions the code "Z48.811," which, according to the Centers for Disease Control and Prevention, corresponds to "aftercare following surgery (for) (on) nervous system." https://perma.cc/QS9U-6N52; *see* CRE 201(2)(b), (c) (permitting a court, in its discretion, to take judicial notice of an adjudicative fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also People in Interest of T.T.*, 2019 CO 54, ¶ 25, n.4 (taking judicial notice of the recordkeeping system used by Colorado courts). That Novak proximately caused that loss was corroborated by substantial evidence that Dunn required multiple brain surgeries.

medical care during the time period in question. The prosecution also presented many victim impact statements from Dunn's friends and family that described Dunn's ongoing recovery from the brain injuries that Novak admittedly caused. *See A.V.*, ¶ 33 ("To meet its burden of proof, a prosecutor may rely solely on victim impact statements."). This evidence detailed that during the time period in question, Dunn required an eighth or ninth brain surgery; the removal, replacement, and re-removal of a tracheostomy tube; the removal of a feeding tube; treatment for several seizures and infections, and therapy to redevelop numerous basic cognitive and physiological functions.

¶ 16    Finally, Novak presented no evidence and contested no particular medical expense. He did not dispute that the described medical care, in the natural and probable sequence of events, resulted from the traumatic brain injury he caused. *See Martinez*, ¶ 13.

¶ 17    For these reasons, we conclude that the evidence, viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that Novak caused $1,600,140.07 in losses to Cigna.

## III. Disposition

¶ 18　The restitution order is affirmed.

JUSTICE MARTINEZ and JUDGE ASHBY concur.